SO ORDERED: November 27, 2013.



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BILLY WAYNE RICHARDS, | ) | Case No. 12-90694-BHL-7 |
| | ) | |
| Debtor | ) | |
| ———————————————— | ) | |
| WINKLER, INC., | ) | Adv. No. 12-59090 |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| BILLY WAYNE RICHARDS, | ) | |
| | ) | |
| Defendant | ) | |
| ———————————————— | ) | |

## JUDGMENT

Winkler, Inc. (hereafter "Winkler") commenced this adversary proceeding on October 15, 2012, by filing a **Complaint to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)** against Billy Wayne Richards (hereafter "Richards"). The matter was tried before this Court on September 9, 2013. After reviewing the Pleadings, Exhibits, oral testimony, and arguments of counsel, the Court hereby finds that Judgment is, accordingly, entered in favor of the Defendant, Billy Wayne Richards.

## Jurisdiction

An action to determine the dischargeability of a debt under 11 U.S.C. § 523 is a "core proceeding" for which the Bankruptcy Court may enter final judgment. 28 U.S.C. § 157(b)(2)(I).

## Procedural History and Factual Background

Winkler is an Indiana corporation that provides many services to supermarkets and convenience stores, including commercial lending. Richards was a businessman who worked a regular full time job, and on the side owned residential apartments, residential rental homes, and a convenience store. Winkler and Richards first did business together through the convenience store, and in August of 2010, they began to discuss the prospect of expanding the relationship to include a separate venture, The Austin Supermarket L.L.C. (hereafter "Austin Supermarket"). Winkler invited Richards to its facility to discuss an extension of credit that would allow Richards to open and run the Austin Supermarket L.L.C. The meeting was fruitful and resulted in Richards applying for an open account loan to purchase a certain amount of inventory on credit from Winkler.

In connection with the credit application, Winkler ran a credit report on Richards and required him to sign as a personal guarantor. Winkler also requested certain documents, including Richards' tax returns from years 2008 and 2009. In its review of the tax returns, Winkler took note of Schedule E, the "Supplemental Income and Loss" section, where it found numerous properties listed with zero mortgage interest shown as being paid. Winkler assumed that if no mortgage interest was shown on the tax return, the properties must be free and clear of any mortgage liens. Winkler, however, neither asked Richards about the properties nor performed a review of the county records.

After deeming Richards to be credit worthy, Winkler opened the account. As collateral for the loan, Richards granted Winkler a security interest in nearly all of Austin Supermarket's currently owned and after-acquired property. Ultimately, inventory in the amount of $211,460.05 was purchased on credit with the open account, and on or about March 4, 2011, Richards signed a promissory note reflecting that amount.

On April 3, 2012, Richards sought relief under Chapter 7 of the Bankruptcy Code by filing a Voluntary Bankruptcy Petition. On Schedule F of the Petition, Richards listed Winkler as a general unsecured creditor. Winkler then commenced this adversary proceeding to determine the dischargeability of Richards' indebtedness. The matter was tried on September 9, 2013.

## Discussion

Winkler argues three theories of liability under the Bankruptcy Code, and the Court will discuss each of them in turn.

### 11 U.S.C. § 523(a)(2)(A)

Winkler first alleges that Richards' debt is excepted from discharge pursuant to § 523(a)(2)(A). Section 523(a)(2)(A) of the Bankruptcy Code precludes the discharge of any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To sustain this allegation, Winkler must prove, by a preponderance of the evidence, that Richards made a false representation or omission, (2) that Richards (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, and (3) upon which Winkler justifiably relied. *Ojeda v. Goldberg*, 599 F.3d 712, 716-717 (7th Cir. 2010); citing *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992).

Winkler argues Richards misrepresented that he and his wife would spend a certain amount of time working at and managing the Austin Supermarket, and that it justifiably relied on such representation. The Court disagrees. While Richards may have overestimated the amount of time he would work in the store, no evidence was presented that he made a false representation with intent to deceive. Richards may very well have initially intended to spend more time at the store, but that does not necessarily mean he intentionally deceived Winkler into thinking he would. The fact that he was stretched thin was plainly evident. Two factors the Court finds did contribute to the failure of the new enterprise were: 1) The unexpected dissolution of Richards long term marriage, which not only had an emotional impact, but also eliminated the possibility of his wife helping at the store, and; 2) The delay in opening the store caused by refrigeration problems, which were not caused by any action of Richards.

The third element of § 523(a)(2)(A), justifiable reliance, is no less problematic. At the time the Parties entered into their business arrangement, Winkler knew that, in addition to the Austin Supermarket venture, Richards also worked a full time job and owned and operated numerous rental properties. With this knowledge, Winkler could not justifiably expect Richards to devote the majority of his time working at or managing the Austin Supermarket. Without more, the Court cannot find Winkler's accusation to be within the purview of § 523(a)(2)(A),

## 11 U.S.C. § 523(a)(2)(B)

Winkler next argues that the debt should be excepted from discharge under § 523(a)(2)(B). In order to prevail on its § 523(a)(2)(B) claim, Winkler must prove, by a preponderance of the evidence, that: (1) Richards made a statement in writing; (2) that was materially false; (3) the statement concerned Richards's financial condition; (4) Winkler actually and reasonably relied upon Richards's materially false statement; and, (5) Richards intended to

deceive Winkler when he made the materially false statement. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995).

Winkler believes that Richards's tax returns from years 2008 and 2009 satisfy the elements of § 523(a)(2)(B). Winkler alleges that Richards, via his tax returns, intentionally deceived and caused it to believe he owned numerous pieces of unencumbered real estate that, in the event of default, could be used to satisfy the balance of the loan. Winkler points to the "Supplemental Income and Loss" ("Schedule E") portions of the tax returns, which are incorporated in the Record as Plaintiff's Exhibits 3 and 4.

Schedule E is the location in a tax return where a taxpayer lists any supplemental income or loss, including payment of mortgage interest. On Richards's tax returns, the amount of mortgage interest in Schedule E was aggregated next to one of the properties, with little or no mortgage interest next to all of the others. This, as the evidence revealed, was not correct. Most or all of Richards' properties were, in fact, encumbered by mortgage liens and presumably incurring mortgage interest. But rather than further investigating the nature of these properties, Winkler assumed they were owned free and clear.

Applying the elements of § 523(a)(2)(B) to the facts of this case, the Court finds that it was not reasonable for Winkler to rely only on Richards' tax returns to determine whether his real estate was unencumbered. Winkler could have asked Richards what property he owned free and clear. Winkler could have also performed a judgment or lien search in the county records. Either of these things would have provided Winkler with the information it sought and certainly provided it with a more reasonable position in this case. But neither occurred. If real estate is the main source of a creditor's planned remedy, it is incumbent upon the creditor to ascertain whether the real estate is owned free and clear, rather than assuming it to be so.

The Court further finds there was no showing of intentional deception. Testimony at trial revealed that an accountant completed the tax returns on behalf of Richards. It is true a taxpayer adopts his accountant's work as his own by signing the tax return, but there are two compelling reasons why the Court concludes Richards had no intention of deceiving Winkler by and through those writings. First, it is inconceivable that Richards intended, when he prepared his 2008 and 2009 tax returns, to induce a lender to rely on such statements in the later part of 2010. Second, it is unlikely Richards chose to pay a higher percentage of income tax by virtue of not reporting mortgage interest and receiving the related tax deduction. In the aggregate, these facts do not tend to show an intent to deceive. Rather, they show an accounting mistake leading to the unreasonable belief that real estate was owned free and clear.

### 11 U.S.C. § 523(a)(4)

Finally, Winkler argues non dischargeability under § 523(a)(4). Pursuant to this section, an individual is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Winkler does not assert any facts suggesting Richards was guilty of embezzlement or larceny. Embezzlement begins as a lawful taking, and then evolves into an unlawful deprivation of property. Larceny, on the other hand, is unlawful from its inception. The essence of each charge contemplates misappropriating someone else's property, not one's own. "One cannot steal or embezzle one's own property. In the same fashion, a debtor that misappropriates a creditor's collateral, and uses it for purposes other than repaying the creditor's loan, does not steal or embezzle that property." *In re Brown*, 399 B.R. 44, 47-48 (N.D.Ind. 2008).. Richards did not steal or embezzle Winkler's property.

To establish this debt is not dischargeable for fraud or defalcation, Winkler must show: 1) an express trust existed; 2) the debt was caused by fraud or defalcation; and, 3) Richards acted as

a fiduciary to Winkler at the time the debt was created. *In re Olinger*, 160 B.R. 1004 (S.D.Ind. 1993), citing *In re Harasymiw*, 97 B.R. 924 (N.D.Ill.1989), aff'd 895 F.2d 1170.

The crux of § 523(a)(4) is the idea of acting in a "fiduciary capacity." Whether the elements of fraud or defalcation exist is moot unless those bad acts were undertaken in breach of the fiduciary obligation. Here, the Court is confronted with facts amounting to nothing more than a lender-borrower relationship. Richards applied for, and was given, an open account loan from Winkler. The account was collateralized by a security interest in Richards's property. Faced with this scenario, the Court agrees with the approach taken by *In re Brown*, 399 B.R. 44 (N.D.Ind. 2008). "The 'fiduciary capacity' required by § 523(a)(4) requires something more than a debtor-creditor relationship." *Id.* at 46. Lacking that fiduciary capacity, the Court cannot find the debt to be non-dischargeable for fraud or defalcation under § 523(a)(4).

## CONCLUSION

For the foregoing reasons, the Court concludes Richards' debt is **DISCHARGEABLE**.

**SO ORDERED AND ADJUDGED.**

###